UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 10-61226

Catrina Marie Provost,                              Chapter 7

        Debtor.                              Hon. Walter Shapero

_____/

## OPINION SETTING REDEMPTION PRICE

Debtor has moved to redeem a 2007 Pontiac G5, VIN 1G2AL15F677239203 ("Vehicle") pursuant to 11 U.S.C. § 722. The Court held an evidentiary hearing to determine what the redemption price should be under the applicable statute, 11 U.S.C. § 506(a)(2), referencing the valuation standard.

Section 506(a)(2) provides:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction fro costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition fo the property at the time value is determined.

At the evidentiary hearing, each side presented appraisers as witnesses. The Debtor's appraiser's credentials and expertise was largely experiential based on a history of working at dealerships, working as a mechanic himself, working for Chrysler, and being in the business of appraising vehicles; however, he had little or no academic training and course instruction, and he did not have credentials from, or a membership in, the various professional appraisal organizations. The Creditor's appraiser had more of the latter, and substantial background and appraising experience. Aside from what is hereinafter set forth, the main difference between what the two appraisers did to reach their conclusions is that the Debtor's appraiser conducted an actual road test of the vehicle with the Debtor driving and he as the passenger.

This bankruptcy case was commenced on June 30, 2010 and the parties seem to agree that the filing date is the proper valuation date. The car's mileage as of the date of the petition

was approximately 44,00 was indicated to be on the low side for a vehicle of this age.

The Debtor's appraiser's conclusion was derived as follows:

(1) He developed a range of apparent actual apparently retail selling prices of the subject vehicle from various sources - the range being between $8,500 and $9,300 for a similar vehicle in good condition without any material adjustments;

(2) He then made the following downward adjustments by reason of his visual inspection and the road test:

    (a) replacement of four tires which showed wear ($250-350);

    (b) paint job to redo an imperfectly done paint job from a previous front end accident (approximately $500);

    (c) the road test revealed vibrations and sounds which, while not specifically diagnosed for their cause, led the appraiser to conclude that there were possible brake, shocks, or wheel bearing issues which might require repair (approximately $750-800).

(3) He then adjusted the $8,500 starting price (which is at the low end of the indicated price range of such vehicle) by reason of the foregoing, totaling $1,500, to reach a value for redemption purposes of $7,000.

Debtor's appraiser also spoke to two used car dealers who indicated that (1) the above listed items needed to be corrected and that they likely would not sell the vehicle unless those corrections were made, and (2) they would buy the vehicle as is for some $7,000, make the repairs, and sell it as retail for a higher price in the range indicated.

The Creditor's appraiser's conclusion was derived as follows:

(1) He determined from various sources that the "asking price" for this vehicle in good condition averaged $10,800;

(2) He made adjustments from that price at fifteen cents per mile for the mileage difference between the average mileage of the vehicles making up the $10,800 average group and the mileage of the vehicle in question ($500 to $600);

(3) He made a further downward adjustment for the paint/finish condition that the Debtor's appraiser identified above (approximately $900 to $1,000, or about 10% of the remainder of the value of the vehicle )

(4) He made a further downward adjustment to account for the differences between the retail dealer "asking price" and the price the vehicle would actually

sell for ($500)

(5) He then adjusted the $10,800 starting price by the downward adjustments, totaling some $2,000, to reach a value for redemption purposes of $8,848.

Accounting for, weighing, and evaluating the differences between the two witnesses primarily involves their starting points and the weight to be given to the actual road test utilized by the Debtor's appraiser. Creditor's appraiser's starting figure, which was described as an "asking price" was appropriately adjusted downward by him to effectively produce what might be considered as the "retail" actual selling price the statutory standard contemplates. That adjusted figure is not too far from the upper part of the range of the Debtor's appraiser's retail selling figures.

This Court has concluded that the actual road test conducted by the Debtor's appraiser both speaks to the thoroughness of his appraisal and to a meaningful extent enhances the credibility of his conclusion. Considering the foregoing, along with the other, relatively minor differences with respect to other aspects of the evidence, the Court concludes that the redemption price should be $7,600. Debtor shall present an appropriate order to that effect.

**Signed on October 27, 2010**

                                                **/s/ Walter Shapero**
                                        **Walter Shapero**
                                        **United States Bankruptcy Judge**